UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDWARD VINCENT RAY,

Petitioner,

v.

SCOTT KERNAN,

Respondent.

Case No. 17-cv-02634-SI

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Edward V. Ray, Jr., filed this *pro se* action for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a prison disciplinary decision that resulted in a forfeiture of time credits. For the reasons explained below, the petition will be granted on the claim that the evidence was not sufficient to support the disciplinary decision.

**BACKGROUND**

Ray was convicted in 2007 in Alameda County Superior Court of second degree robbery, and is now serving a sentence of 38 years and 4 months in prison. Docket No. 9 at 1. He does not challenge that conviction here. *Id.* at 1-2. Instead, Ray challenges a disciplinary decision on a rule violation report, commonly known as a CDC-115. *Id*. The events occurred at La Palma Correctional Center ("LPCC"), in Eloy, Arizona, where Ray was housed as a California prisoner on an out-of-state placement. *Id.* at 2. He was at the relevant time a prisoner of the State of California subject to the rules of the California Department of Corrections and Rehabilitation ("CDCR"). *Id*.

A CDC-115 written by a prison mail room clerk, Donald Justus, charged Ray with conspiracy to introduce a controlled substance into the institution for possession. Docket No. 9-1

at 13. The CDC-115 described the circumstances of the incident:

> On Thursday, February 6, 2014, at approximately 1043 hours, I, Mailroom Clerk Justus, while housing [sic] and scanning incoming mail, came across a legal-size brown envelope addressed to Inmate Ray, E. (#F-73521), in Cocopa-Alpha #120, with a return address of Kim Loreno, 17 Pearl St., Apt. B, Oakland, CA 94611. During inspection of the envelope, I found one end of the envelope had been opened and re-glued shut. As I ran my fingers down that side, I could feel there was something in the end of the envelope. On opening that end of the envelope, I observed a green-colored substance. I maintained the sole custody of the substance, and immediately called for Shift Captain Bobertz. Facility Investigator Denham took possession of the substance, and completed the Chain of Custody Form. Six (6) photos were taken of the substance. Ray is aware of this report. Ray, E. has a GED and is not a participant of MHSDS or A.D.A.

*Id*. The CDC-115 also stated that LPCC later received test results from Aegis Crimes stating that a sample of the confiscated material "tested positive for Cannabidiol, Cannabinol, and Delta-9-Tetrahydrocannibinol (Marijuana) at the weight of 69 mg." *Id*.; *see also* Docket No. 9-1 at 27 (Aegis Crimes Certificate of Analysis).

A disciplinary hearing was held on May 9, 2014. Docket 9-1 at 15. Unit Manager Crosby ("Crosby") acted as the hearing officer. *Id*. Ray requested that mail room clerk Justus, who had written the CDC-115, be present at the hearing. *Id*. at 16. According to hearing officer Crosby's report, Ray believed that Justus planted the marijuana because Justus was "one of four Defendants that [Ray] mentioned in a civil suit." *Id.* In addition, Ray stated that Justus's presence as reporting officer was required under 3315(e)(1)(C) of the California Code of Regulations. *Id*. Hearing officer Crosby denied the request to call Justus as a witness because Justus was "no longer an employee at LPCC" and, therefore, not available as a witness under section 3315(e)(1)(C) of Title 15 of the California Code of Regulations. Docket No. 9-1 at 16.

Hearing officer Crosby found Ray guilty of violating "CCR #3016(a) for the specific act of 'Conspiracy to Introduce Controlled Substance into an Institution for Possession.'"[1] *Id*. The

---

[1] The version of section 3016(a) in effect at the relevant time prohibited inmates from, among other things, possessing controlled substances. *See* former Cal. Code Regs. tit. 15, § 3016(a) ("Inmates shall not inhale, ingest, inject, or otherwise introduce into their body; use, possess, manufacture, or have under their control any controlled substance, medication, or alcohol, except as specifically authorized by the institution's/facility's health care staff.").

hearing officer wrote that he relied upon the following evidence to reach his guilty finding: (1) Justus's written CDC-115 report, (2) photographs showing the "bag" and its contents, as well as the weight of the marijuana on a scale, (3) the result of an NIK field test conducted by LPCC,[2] (4) the Aegis Crimes test results that were positive for marijuana, and (5) the Chain of Custody form. *Id*. at 16-17.

Ray filed an inmate appeal. Prison officials granted his appeal in part and ordered that the CDC-115 be reissued and reheard. Docket No. 9-1 at 29. A new CDC-115 was written up describing the same incident; this CDC-115 was written by facility investigator Denham rather than by mail room clerk Justus. *Id*. at 32-33. According the CDC-115, facility investigator Denham responded to the mail room after Justus found the contraband. *Id*. Denham wrote that he met with Justus, who retrieved the piece of mail from the safe and gave it to Denham. *Id*. Denham did the NIK field test that tested positive for marijuana and took photos of the evidence. *Id*.

At the rehearing held on November 5, 2014, lieutenant Beguhl was the hearing officer. *Id.* at 35. Ray requested that Justus and Crosby be present as witnesses. *Id*. at 34. Hearing officer Beguhl denied Ray's request that Justus be called as a witness, finding that Justus was unavailable because he was no longer employed by the prison. *Id.* at 36. According to the hearing officer's report, Ray stated that "'they wrote me up'" for the disciplinary offense because Justus was named as a defendant in a civil rights action filed by Ray. *Id*. Ray's other requested witness, hearing officer Crosby, was allowed and appeared via speakerphone. *Id.*

Hearing officer Beguhl found Ray guilty of "violating CCR #3016(a) for the specific act of 'Conspiracy to Introduce Controlled Substance into an Institution for Possession.'" *Id*. The hearing officer wrote that he relied on the following evidence to find Ray guilty: (1) investigator Denham's CDC-115, (2) mail clerk Justus's incident report, (3) photographs depicting the envelope, the contraband weight, the contraband papers, the substance found, and the positive test

---

[2] The NIK test was a field test for marijuana conducted at the prison on the day the contraband was found. The NIK test had positive results for marijuana. Docket No. 9-1 at 26.

3

1 supporting the evidence of marijuana, (4) the NIK field test that had a positive result for marijuana, (5) the Aegis Crimes lab report, and (6) the Chain of Custody form. *Id*. at 36-37.

As a result of the guilty finding, Ray was disciplined. Docket No. 9 at 2. The discipline included a loss of 130 days of time credits. Docket No. 9-1 at 37.

Following the rehearing, Ray filed an unsuccessful inmate appeal about the disciplinary decision. He also filed unsuccessful state court habeas petitions challenging the disciplinary decision. The Alameda County Superior Court issued a reasoned decision, Docket No. 9-1 at 289-91, and the California Court of Appeal and California Supreme Court summarily denied Ray's petitions, Docket No. 10 at 231, 233.

Ray then filed this action. Respondent has filed an answer and Ray has filed a traverse.

## LEGAL STANDARD

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254 is the proper jurisdictional basis for a habeas petition attacking the execution of a sentence by a petitioner in custody pursuant to the judgment of a state court. *See White v. Lambert*, 370 F.3d 1002, 1004 (9th Cir. 2004), *overruled on other grounds by Hayward v. Marshall*, 603 F.3d 546, 554 (9th Cir. 2010).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

The state-court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When confronted with an unexplained decision from the last state court to have been presented with the issue, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

**DISCUSSION**

Ray contends that his federal right to due process was violated in two ways: (1) there was insufficient evidence to support the disciplinary decision, and (2) he was denied the right to call a witness. Ray's original disciplinary decision was set aside and he had a rehearing. That rehearing is the relevant decision for judicial review because that decision is the reason for the current loss of time credits.

**I. State Court Decision.**

The Alameda County Superior Court rejected Ray's due process claim that the evidence was insufficient to support the disciplinary decision. The Alameda Superior Court identified the

"some evidence" standard from *Superintendent v. Hill*, 472 U.S. 445 (1985), as the controlling standard and determined this standard was met. Docket No. 9-1 at 290. The superior court explained its reasoning for rejecting this claim:

> [I]t is irrelevant whether Petitioner possessed the marijuana because he was not charged with possession but with conspiracy. There is "some evidence" to support the finding that Petitioner conspired with the sender of the envelope to introduce marijuana into prison for possession. The envelope was addressed to Petitioner. Furthermore, the manner in which the marijuana was sent also supports a conspiracy- it was concealed inside a flap that had been re-glued closed. This court is aware that Petitioner denied any knowledge of the why someone would send him a controlled substance and alleged that Justus wrote Petitioner up because Justus is a defendant in a civil rights lawsuit. However, it is not this court's job to reweigh the evidence but to determine whether "some evidence" supports the guilty finding. This court is not authorized to reverse a "prison disciplinary findings because, in the reviewing court's view, there is a realistic possibility the prisoner being disciplined is not guilty of the charged infraction." (See [*In* re] Zepeda [(2006)], 141 Cal.App.4th [1493,] 1498.) Accordingly, there is some evidence to support the guilty finding.

Docket No. 9-1 at 290.[3]

As the last reasoned decision from a state court, the Alameda County Superior Court's decision is the decision to which § 2254(d) is applied. *See Wilson*, 138 S. Ct. at 1192. Ray is entitled to habeas relief only if the California Court of Appeal's decision was contrary to, or an unreasonable application of, clearly established federal law from the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented.

## II. Federal Habeas Analysis.

A prisoner is entitled to due process before being disciplined when, as here, the discipline imposed will inevitably affect the duration of his sentence. *See Sandin v. Conner*, 515 U.S. 472, 484-87 (1995). The process due in such a prison disciplinary proceeding includes: (1) written

---

[3] The superior court also determined that the hearing officer did not violate due process by refusing to call Justus as a witness, given that Justus was no longer available to be a witness because he was no longer employed at LPCC. Docket No. 9-1 at 289-90. The court declines to reach this claim because the petition for writ of habeas corpus is resolved on the some evidence claim.

notice, (2) time to prepare for the hearing, (3) a written statement of decision, (4) allowance of witnesses and documentary evidence when not unduly hazardous, and (5) aid to the accused where the inmate is illiterate or the issues are complex. *Wolff v. McDonnell*, 418 U.S. 539, 564-67 (1974).

Due process also requires that there be "some evidence" to support the disciplinary decision. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). The "some evidence" standard in *Superintendent v. Hill* refers to evidence from which the finding of the decision-maker may be deduced: "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Id*. An examination of the entire record is not required nor is an independent assessment of the credibility of witnesses or weighing of evidence. *See id*. The relevant question is whether there is any evidence in the record that could support the conclusion reached by the decision maker. *See id*. at 455-56. This standard is much lower than that used in criminal trials.[4] The standard is not, however, so low that a person may be punished when "no shred of evidence of the inmate's guilt is presented." *Burnsworth v. Gunderson*, 179 F.3d 771, 774 (1999) (holding that no evidence supported a finding that an inmate attempted to escape when an inmate merely stated he would be forced to flee if put in general population).

Here, the Alameda County Superior Court determined that the "some evidence" standard was met to sustain a finding of guilt on the charge of conspiracy to introduce a controlled

---

[4] The Ninth Circuit has held that the information informing the basis of the prison disciplinary action must have some indicia of reliability. *See Cato v. Rushen*, 824 F.2d 703, 704-05 (9th Cir. 1987) (holding that an uncorroborated hearsay statement of confidential informant with no first-hand knowledge of any relevant statements or actions of defendant and polygraph statement of inmate who made statement was inconclusive). However, circuit level precedent cannot support habeas relief in a case, such as this one, in which 28 U.S.C. § 2254(d) applies.

7

substance into the institution for possession. According to the superior court, that evidence consisted of (1) the fact that the letter was addressed to Ray, and (2) the fact that the marijuana was concealed in the re-glued envelope flap. Docket No. 9-1 at 290.

The "some evidence" standard is extremely deferential to prison officials who render disciplinary decisions, and to the state court's decision on habeas review. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). However, even these low standards were not met here. This is that rare case in which, in applying AEDPA standards, this court concludes that the superior court's decision was an unreasonable application of *Superintendent v. Hill*'s "some evidence" standard.

Both the disciplinary officer and the superior court focused on the target offense (i.e., sending marijuana to a prisoner for possession) but paid scant attention to the need for an agreement between sender and addressee, even though an agreement to commit a target offense is the essence of a conspiracy. Strong evidence of a target offense does not overcome the dearth of evidence of an agreement when the charge is that a prisoner has taken part in a conspiracy.

There was no evidence that would allow a rational trier of fact to conclude there was a conspiracy. A letter was addressed to Ray, and in that letter a very small amount of marijuana was concealed. These two facts could support a guilty finding if prison rules imposed strict liability on an inmate any time someone mailed contraband to him. But strict liability is not the rule. Instead, prison officials used these two facts to find Ray guilty of conspiring to introduce marijuana into the prison for possession. A conspiracy is generally understood to require a showing "that the conspirators intended to agree or to conspire, and intended to commit the offense which is the subject of the conspiracy." *In re Estrada*, 47 Cal. App. 4th 1688, 1696 (1996). The two facts relied upon by the superior court – the letter being addressed to Ray and the secreting of marijuana in that letter – do not lead to a reasonable inference that Ray ever made any agreement with the sender of the letter, let alone any agreement to introduce marijuana into the prison.

Respondent argues that there was some evidence of a conspiracy "because two persons were involved in the illegal act and arrangements must have been made in advance." Docket No. 9 at 7. Specifically, the sender and Ray had to have planned the mailing because "how the marijuana was hidden required the intended recipient to know where to find it." *Id.* at 7.

8

Although there was only a small amount of marijuana, it obviously created some bulge in the envelope, as the mailroom clerk wrote that he ran his fingers down the side of the envelope and "could feel there was something in the end of the envelope." Docket No. 9-1 at 13. If the mailroom clerk felt the marijuana bulge without having been alerted in advance to its existence, surely one cannot reasonably infer that the manner of concealment meant advance arrangements "must have been made" with the prisoner-recipient so he could find that marijuana.

Respondent also argues that, "considering how much controlled substances are worth in prison, it is inconceivable that someone would mail marijuana to a prisoner at random." Docket No. 9 at 7. The evidence does not reasonably support respondent's inference. The amount of the marijuana was very small: 0.2 grams of marijuana was found. Docket No. 9-1 at 23. The amount apparently would have made about half a marijuana cigarette, or "joint," if estimates in a New York Times article are correct. *See* Niraj Chokshi, *How Much Weed Is in a Joint? Pot Experts Have a New Estimate*, N.Y. Times (July 14, 2016), https//www.nytimes.com/2016/07/15/science/how-much-weed-is-in-a-joint-pot-experts-have-a-new-estimate.html (reporting on a new study published in the Drug and Alcohol Dependence Journal that found the average amount of marijuana in a joint to be 0.32 grams). The cost of the marijuana outside of prison would have been negligible, if estimates in that same article are correct. *See id.* (reporting on study that found the average price of a joint was $3.50). Given the small quantity and the low cost to the sender, a sender may just as easily have sent the marijuana as a gift to an inmate the sender liked or to create trouble for an inmate the sender disliked. With these obvious alternative reasons to send the marijuana, it was not rational to infer from the evidence that there was a conspiracy, given the paucity of other information suggesting a conspiracy – such as an informant telling officials he had heard of the prisoner's plan to import marijuana, discovery of a telephone call or letter mentioning a plan to send marijuana to the prisoner, or a history of importation of marijuana by the prisoner. Moreover, although respondent is quite likely correct that marijuana is more expensive in prison than outside of prison, the in-prison cost would not dictate the sender's motive, let alone make it "inconceivable" that an outsider would send marijuana to a prisoner at random.

No evidence supports the finding that an agreement had been made between the sender and Ray before the marijuana arrived at the prison. The "some evidence" standard is not met when the record is "so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Superintendent v. Hill*, 472 U.S. at 457. Fairminded jurists would not disagree that the *Superintendent v. Hill* "some evidence" standard is not met by a mere guess that an inmate might have engaged in wrongdoing, and the conclusion that Ray was involved in a conspiracy to introduce marijuana into the facility was nothing more than a mere guess. It was an unreasonable application of *Superintendent v. Hill* for the superior court to conclude that the disciplinary finding that Ray was involved in a conspiracy sufficed to meet the "some evidence" standard. Ray is entitled to the writ on this claim.

## CONCLUSION

The petition for writ of habeas corpus is GRANTED on the merit of the some evidence claim. The May 9, 2014 prison disciplinary decision, and resulting loss of time credits, shall be vacated. The clerk shall close the file.

**IT IS SO ORDERED**.

Dated: November 19, 2018

SUSAN ILLSTON
United States District Judge